PAUL P. DAVIS, a/k/a PACY DAVIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Davis v. Commissioner
Docket No. 9696-74.
United States Tax Court
T.C. Memo 1975-370; 1975 Tax Ct. Memo LEXIS 1; 34 T.C.M. (CCH) 1588; T.C.M. (RIA) 750370; December 31, 1975, Filed Henry J. Burt, Jr., for the petitioner. Robert E. Touchton, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax for the years and in the amounts as follows: Addition to Tax Tax Year Ended
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Dec. 31, 1967 $333
$ 83.25
$16.65
Dec. 31, 1968
358
89.50
17.90
Dec. 31, 1969
109
27.25
5.45
Dec. 31, 1970
415
103.75
20.75
Dec. 31, 1971
339
84.75
16.95
The issues for decision are (1) whether for the years 1968 through 1971 certain payments of personal expenses on behalf of petitioner by a corporation of which he was the chief executive officer constituted income to petitioner and, if so, the amount *2 of such income; (2) whether respondent correctly determined that petitioner's business use of his automobile for the years 1968 through 1971 was 70 percent; and (3) whether petitioner's failure to file Federal income tax returns for the years 1968 through 1971 was due to reasonable cause. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, an unmarried individual who resided in Louisville, Kentucky at the date of the filing of his petition in this case did not file individual income tax returns for the taxable years 1968 through 1971. Petitioner filed a Form 1040A, U.S. Individual Income Tax Return, for the year 1967 on August 12, 1968, after receiving an extension of time to file until August 15, 1968. [1] During the years here involved petitioner was a salesman, purchaser, and chief executive officer of a corporation, Vinyl Specialty Manufacturing Company (Vinyl). The plant of Vinyl was located near Louisville, Kentucky and during the years 1968 through 1971 petitioner resided in Louisville. He kept his records on the cash basis of accounting during these years. *3 In late 1971 petitioner purchased in his own name a building at 1625 Portland Avenue in Louisville. The manufacturing operations of Vinyl which had been conducted in a larger building outside of Louisville were moved at some time after petitioner purchased this building to the building on Portland Avenue. Petitioner's mortgage payment of $133.54 on the Portland Avenue building for December 1971 was made for him by Vinyl. Petitioner commenced working when he was 8 or 9 years old selling papers and selling peanuts and programs at ball parks. He lived in an orphanage and saved what money he could. When he was in high school he obtained a concession selling advertising programs for major football games and sporting events. He went to designing school in New York when he was 15 years old. While he was in school he played basketball, football, baseball, and was on the track team, and after finishing high school began working in department stores where he worked until he was approximately 30 years old. He later acquired a retail business of his own. In 1959 he left the retail business and started selling advertisements for phone book covers for a company called National Merchandising *4 Corporation on a commission basis. In 1966 petitioner and some of the other sales people of National Merchandising Corporation decided to go into business for themselves. They bought a company in Louisville, Kentucky (Vinyl) in a vinyl specialty manufacturing business. The operations of the company were located in a plant approximately 30 miles from Louisville. The company manufactured plastic telephone book covers and other specialty items such as pocket protectors and decals and did screen printing. This operation required electronic equipment. Vinyl acquired such equipment from a company that had bought equipment which had been taken for nonpayment of taxes by the Internal Revenue Service. Petitioner, either by capital contribution or by loans, advanced money to Vinyl from funds he had accumulated prior to 1966. In 1966 and 1967, Vinyl had sales in the vicinity of $100,000 and had between 10 or 15 salesmen and between 11 to 17 persons working at the plant. The salesmen were on a commission basis. Petitioner rented an apartment in Louisville at a cost of approximately $125 a month, which rent included utilities other than telephone. Petitioner lived in this apartment and also *5 used the apartment as a place for training of newly recruited salesmen for Vinyl. Also, on occasions, some of the salesmen who did not reside in the Louisville area would stay overnight in petitioner's apartment when they were in Louisville. During the years here in issue the rental payments for this apartment were made by Vinyl. Sales of Vinyl's products were made in a number of different states including Illinois, Ohio, Wisconsin, Tennessee, Florida, and Texas. Some of the salesmen of Vinyl came from these areas. Since Vinyl's plant was located approximately 30 miles outside of Louisville and petitioner's apartment was located in Louisville, the apartment was a more convenient place to hold training sessions for these salesmen. By some time in 1968 Vinyl's sales had fallen off to less than $25,000 a year and petitioner did most of the full-time selling for Vinyl as well as continuing to discharge his other duties. Petitioner would recruit salesmen during the years 1968 through 1971 and attempt to train them, but they would stay only a few weeks. During this time Vinyl did not have more than two salesmen at any one time other than petitioner. Also, by some time in 1968 there were *6 only one full-time and one part-time employee at Vinyl's plant in addition to petitioner. Petitioner owned in his own name a 1966 Cadillac on which he had made the downpayment and initially had made the monthly payment. Petitioner used his car in the business of Vinyl under an agreement which provided for Vinyl paying expenses on the car and replacing the car. Vinyl made some payments on the 1966 Cadillac or advanced funds to petitioner with which to make these payments. In 1970 petitioner traded in the 1966 Cadillac and acquired a 1970 Cadillac, taking title in his own name. The 1970 Cadillac was financed on a monthly payment basis and all payments on the 1970 Cadillac were made by Vinyl. Petitioner was away from Louisville traveling in behalf of Vinyl approximately three days out of every week. He worked long hours not only doing selling but managing the plant and, during the years here in issue, even acting as an engineer for Vinyl. On many occasions when petitioner was out of town traveling on behalf of Vinyl he would stay with friends and have very small traveling expenses. He worked long hours in connection with Vinyl's business. Generally petitioner's automobile was parked *7 at his apartment when it was not being used for business, but he did occasionally take the car out for personal use such as to call at a funeral home or a hospital. During the years 1968 through 1971 the total amount paid to or on behalf of petitioner by Vinyl, including payment of his apartment rent and his automobile, would run approximately $600 a month. During each of the years here in issue petitioner, in addition to working for Vinyl, sold certain advertising on a commission basis for another concern and made between $600 and $700 a year from this work. During 1966 and 1967 a C.P.A. who was a partner in an accounting firm located in Louisville prepared corporate income tax returns for Vinyl. This accountant also had certain contacts with petitioner in 1967 and possibly in 1968 but was not provided with any information as to petitioner's liability for personal Federal income taxes except that petitioner did at some time during this period state to the accountant that he had no personal income for the year. The accountant did not make any investigation of petitioner's income or see any documents on which to base advice to petitioner of petitioner's obligation to file individual *8 income tax returns. Respondent in his notice of deficiency computed petitioner's income tax by reference to an estimate of petitioner's personal and other nondeductible expenditures and payments made by Vinyl on behalf of petitioner. The following schedule, which was attached to the notice of deficiency, shows the basis of respondent's computation: 1967
1968
1969
1970
1971
Payments on realty - 1625 Portland
Louisville, Ky.
$ 133.54
Apartment rental - $125/month
1930 Peabody Ln. (50% business)
$ 750.00
$ 750.00
$ 750.00
$ 750.00
750.00
Payments - auto loans - Louisville
Trust Co.
1,831.08
1,831.08
457.77
2,473.68
2,697.72
Clothing and miscellaneous
100.00
100.00
100.00
100.00
100.00
Food
780.00
780.00
780.00
780.00
780.00
Gasoline, auto repairs (Personal)
175.00
175.00
175.00
175.00
175.00
Auto insurance (personal portion)
150.00
150.00
150.00
150.00
150.00
Depreciation expense
(750.00)
(750.00)
(750.00)
(933.33)
(933.33)
Adjusted Gross Income
$3,036.08
$3,036.08
$1,662.77
$3,495.35
$3,852.93
Allowable Depreciation
Basis
Method
Years
1967
1968
1969
1970
1971
Auto - 1966 Cadillac
$2,250
S/L
3 $750 $750 $750
Auto - 1970 Cadillac
2,800
S/L
3
$933.33
$933.33
*9 1966 Cadillac
1970 Cadillac
Basis Computation: Cost or other basis
$5,715
$6,500
Less: Salvage
(2,500)
(2,500)
$3,215
$4,000
Business portion (70%)
$2,250
$2,800 Respondent further determined in his notice of deficiency that since petitioner had not filed returns for the years 1968 through 1971 and had not shown that such failure to file was due to reasonable cause an addition should be made to tax under section 6651(a), I.R.C. 1954, [2] of 25 percent and that a part of the underpayment for each year was due to negligence or intentional disregard of rules and regulations and therefore an addition to tax of 5 percent under section 6653(a) should be made. OPINION Petitioner takes the position that his apartment was used solely for the business of Vinyl and therefore no part of the rental of the apartment was a personal expense of his. He apparently takes the position that since his personally-owned automobile was used primarily for the benefit of Vinyl any payment made by Vinyl on the automobile should not be treated as personal income to him. *10 Further, petitioner questioned whether Vinyl made the payments on the 1966 Cadillac in 1968 and 1969, but his testimony in this regard is so vague and indefinite that we have concluded it does not overcome the presumption of correctness of respondent's determination. Petitioner argues that he lives so frugally that the $100-a-year estimated by respondent for clothing and miscellaneous is overstated and that the amount of $780 for food is overstated. However, petitioner was vague in any estimate he could give of the amounts of these expenses, admitting that he did have certain expenses for clothes, laundry which he stated was done in the laundry machine in his apartment, and certain other miscellaneous items. Petitioner testified that he ate very little and used frozen TV dinners very often and therefore he considered respondent's determination of $780 a year for food to be excessive. However, petitioner's testimony in this regard was vague and too indefinite to overcome the presumption of correctness of respondent's computation. Petitioner does not question the amount determined by respondent for gasoline and auto repairs made by Vinyl or the amount of depreciation on the automobile *11 as computed by respondent, but argues that to allocate 30 percent of the total amounts of the gasoline and auto repairs and auto insurance paid by Vinyl to his personal use in each of the years here in issue is excessive. He also argues that to allocate only 70 percent of depreciation on the automobile to his business use of the car is not a sufficient amount. Petitioner argues that 100 percent of the usage of his automobile was for business. However, it was the only automobile petitioner had and he did admit to certain personal usage. Although this record is far from clear, on the basis of the evidence as a whole we conclude that petitioner's business use of the automobile was in excess of 70 percent and, weighing heavily against petitioner for lack of preciseness in his testimony, have determined the automobile was used 10 percent for personal use and 90 percent for business use. Petitioner, in addition to arguing that respondent overstated the amount of any payments to him by Vinyl which were used for his personal living expenses and that respondent overstated the amount of automobile payments made by Vinyl on his behalf also argues that he had advanced money to Vinyl and that *12 any amounts paid to him by Vinyl during the years here in issue were either return of his capital investment in Vinyl or repayment of loans. However, in our view the record is not sufficient to support this contention on the part of petitioner. Petitioner produced no evidence of any savings account to substantiate his claim of having funds available from such a source. The record is very confusing as to the amount, if any, which petitioner advanced to Vinyl and whether any advances which petitioner may have made were for the purchase of stock, capital contributions or loans. On the basis of this record we conclude that the payments made to or on behalf of petitioner by Vinyl were made to petitioner or on his behalf because of his employment relationship with Vinyl and, except to the extent that such amounts may have been reimbursement for whatever traveling expenses he had on behalf of Vinyl, were income to petitioner. The record is not clear but petitioner is apparently contending that the payments by Vinyl on the purchase price of automobiles which he owned were not payments on his behalf. If petitioner is contending that because of his business use of the automobile or his agreement *13 with Vinyl as to his use of his personally-owned automobile for business those payments are not for his benefit and therefore not income to him, we reject the contention. Petitioner owned the automobile and could do with it as he pleased. The monthly payments on the automobile were his obligation. When the corporation paid petitioner's obligation on an automobile to which he held title, the amount was a payment on behalf of petitioner. This of course does not mean that petitioner is not entitled to deduct as a business expense the cost of his business use of his automobile. However, respondent has in effect allowed this deduction by allowing petitioner a deduction for depreciation on the automobile and only including in petitioner's income that portion of the oil, gas, repair, and insurance expenses of the automobile allocable to petitioner's personal use thereof. Since we have no basis in this record for determining any amounts for personal expenses of petitioner paid by Vinyl different from the amounts determined by respondent, we sustain respondent's determination except with respect to the payments for petitioner's personal use of the automobile which we have held to be only *14 10 percent of the amounts paid by Vinyl rather than 30 percent. Petitioner made some argument that the $133.54 payment made by Vinyl on property he owned on Portland Avenue in Louisville, Kentucky should be offset against rent he should have collected from Vinyl. This payment was made for the month of December 1971 and this record is totally insufficient to show when Vinyl moved its operation to the building on Portland Avenue and what arrangements existed between petitioner and Vinyl with respect to Vinyl's use of this building. We therefore sustain respondent in including the $133.54 in petitioner's income for 1971 for lack of proof to the contrary on the part of petitioner. Petitioner contends that his failure to file returns for 1968 through 1971 was due to reasonable cause. He stated that he told his C.P.A. that he had only between $600 and $700 of income in the years here in issue and that he had made this amount from sources other than his work for Vinyl and the C.P.A. advised him that it was not necessary for him to file an income tax return under these circumstances. Whether we would conclude that petitioner's failure to file was due to reasonable cause if we accepted *15 this testimony as accurate, we need not decide. On the basis of this record we conclude petitioner's failure to file Federal income tax returns for the years 1968 through 1971 was not due to reasonable cause. Petitioner's testimony with respect to his failure to file returns is in conflict with the stipulated testimony of the C.P.A. Since petitioner's other testimony is so vague and indefinite and his memory on so many items faulty, we accept the stipulated testimony of the C.P.A. Also, the C.P.A.'s statement is more reasonable since for years prior to the year beginning January 1, 1970, any single individual under 65 who had gross income of $600 or more was required to file a return. [3]
Since petitioner admits that he *16 received income from sources other than Vinyl in excess of $600 for each year here in issue, we consider the testimony of the accountant to be more likely to be correct than petitioner's recollection since an accountant engaged in preparing income tax returns would be likely to know that a return was required for 1968 and 1969 for a single individual with income in excess of $600 whether or not that individual would be required to pay any tax. Petitioner has offered no evidence to overcome the presumption of correctness of respondent's determination of the 5 percent addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. We therefore sustain respondent's determination of additions to tax under both section 6651(a) and section 6653(a). Our holding with respect to 90 percent of the use of the automobile being for business and 10 percent for personal use will require not only an increase in the depreciation deduction allowable to petitioner but also require a reduction in the portion of the gasoline and auto repairs and automobile insurance which is included in petitioner's income as payment of personal items on his behalf by Vinyl.
*17 Decision will be entered under Rule 155.
Footnotes
1. Because of this fact which the parties stipulated respondent has conceded that the deficiency determined by him for the year 1967 is barred by the statute of limitations.↩
2. All statutory references are to the Internal Revenue Code, as amended, unless otherwise noted.↩
3. SEC. 6012. PERSONS REQUIRED TO MAKE RETURNS OF INCOME. (a) General Rule.--Returns with respect to income taxes under subtitle A shall be made by the following: (1) Every individual having for the taxable year a gross income of $600 or more (except that any individual who has attained the age of 65 before the close of his taxable year shall be required to make a return only if he has for the taxable year a gross income of $1,200 or more); * * *↩